IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DONNIE YARN and DESHAWN MURPHY, <br><br> Plaintiffs, <br><br> v. <br><br> TRADER JOE'S, <br><br> Defendant. | Case No. 3:25-cv-01403-SB <br><br> **OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiffs Donnie Yarn ("Yarn") and Deshawn Murphy ("Murphy") (together, "Plaintiffs"), appearing as self-represented litigants, filed this case against Defendant Trader Joe's ("Trader Joe's"). Now before the Court is Trader Joe's motion to dismiss Plaintiffs' second amended complaint under Federal Rule of Civil Procedure 12(b)(6). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. For the reasons discussed below, the Court grants in part and denies in part Trader Joe's motion to dismiss.

///

///

///

PAGE 1 – OPINION AND ORDER

## BACKGROUND[1]

Plaintiffs allege that they were engaged in charitable fundraising as representatives of a non-profit organization and were raising funds from a table on a public sidewalk outside of a Trader Joe's store in Portland, Oregon. (*See* Compl., ECF No. 1-1; Am. Compl. ("FAC"), ECF No. 1-2; Second Am. Compl. ("SAC"), ECF No. 22.) On multiple occasions, Trader Joe's managers and employees "confronted Plaintiffs, demanded that Plaintiffs leave the public sidewalk, and falsely asserted that Plaintiffs were acting unlawfully." (SAC ¶ 8.)

Yarn filed an earlier case against Trader Joe's in state court following prior incidents, and the case settled and was dismissed with prejudice. (SAC ¶¶ 13-15.) Plaintiffs allege that Trader Joe's materially breached the settlement agreement "by resuming hostile conduct and exclusionary actions." (*Id.* ¶ 15.) Plaintiffs also allege that Trader Joe's "escalated the situation in view of customers and passersby" and "contacted law enforcement and falsely reported that Plaintiffs were causing a disturbance." (*Id.* ¶¶ 10-11.)

Plaintiffs originally filed this action in Multnomah County Circuit Court on July 8, 2025, asserting claims for breach of contract, defamation, intentional infliction of emotional distress ("IIED"), harassment, and civil rights violations, and seeking $100,000 in damages. (*See* Compl. at 2-4.) On July 14, 2025, Plaintiffs filed an amended complaint, asserting claims for breach of contract, defamation, IIED, and First Amendment violations under 42 U.S.C. § 1983 ("Section 1983"). (*See* FAC at 3-4.) On August 7, 2025, Trader Joe's timely removed the case to this court,

---

[1] The Court assumes these facts are true for the purpose of reviewing the pending motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[When] ruling on a defendant's motion to dismiss a complaint [the court] must accept as true all of the factual allegations contained in the complaint.") (simplified); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (noting that when reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party") (citation omitted).

PAGE 2 – OPINION AND ORDER

asserting diversity jurisdiction under 28 U.S.C. § 1332. (Def.'s Notice Removal at 1-4, ECF No. 1.)

On December 5, 2025, the Court granted Trader Joe's motion to dismiss Plaintiffs' amended complaint and dismissed the complaint with leave to amend (ECF No. 18). On December 15, 2025, Plaintiffs filed a second amended complaint (ECF No. 22). Plaintiffs' second amended complaint includes claims for breach of contract, defamation, IIED, and intentional interference with economic relations ("IIER"). (SAC ¶¶ 22-36.)

On January 9, 2026, Trader Joe's filed a motion to dismiss the second amended complaint for failure to state a claim (Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 25), Plaintiffs opposed the motion (Pls.' Opp'n Def.'s Mot. Dismiss, ECF No. 26; *see also* Pls.' Mem. Law Opp'n Def.'s Mot. Dismiss ("Pls.' Opp'n"), ECF No. 27), Trader Joe's replied (Def.'s Reply, ECF No. 28), and the Court took the motion to dismiss under advisement without oral argument on January 19, 2026 (ECF No. 29).

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

PAGE 3 – OPINION AND ORDER

Courts "have a duty to read a pro se complaint liberally," *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021) (citation omitted), and "[self-represented] litigants should be treated with 'great leniency' when evaluating compliance with 'the technical rules of civil procedure.'" *Seals v. L.A. Unified Sch. Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) (quoting *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986)). As the Ninth Circuit has explained, there is a "good reason that [courts] afford leeway to [self-represented] parties, who appear without counsel and without the benefit of sophisticated representation: 'Presumably unskilled in the law, the [self-represented] litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel.'" *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)).

There are, however, limits on the leeway that courts afford to self-represented litigants. For example, although courts "construe pro se pleadings liberally, . . . [courts] 'may not supply essential elements of the claim that were not . . . pled[.]'" *Owen v. City of Hemet*, No. 21-55240, 2022 WL 16945887, at *1 (9th Cir. Nov. 15, 2022) (first citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); and then quoting *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)).

## DISCUSSION

Trader Joe's moves to dismiss Murphy's breach of contract claim and Plaintiffs' claims for defamation, IIED, and IIER for failure to state a claim upon which relief can be granted. (Def.'s Mot. at 5-13.) For the reasons discussed below, the Court grants in part and denies in part Trader Joe's motion to dismiss.

### I.     BREACH OF CONTRACT CLAIM

#### A.     Applicable Law

"To state a claim for breach of contract, a plaintiff 'must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's

PAGE 4 – OPINION AND ORDER

breach resulting in damage to plaintiff.'" *Schoene v. Spirit Airlines, Inc.*, 726 F. Supp. 3d 1248, 1260-61 (D. Or. 2024) (quoting *Slover v. Or. State Bd. of Clinical Soc. Workers*, 927 P.2d 1098, 1101 (Or. Ct. App. 1996)).

  **B.**  **Analysis**

  The Court previously dismissed Plaintiffs' breach of contract claim on the following grounds: (1) Plaintiffs did not allege the relevant terms of the alleged contract nor how Trader Joe's breached the relevant terms; (2) Plaintiffs did not allege Yarn's own full performance and lack of breach; and (3) Plaintiffs did not allege any facts to support that Murphy was a third-party beneficiary of the settlement agreement between Yarn and Trader Joe's. (Op. & Order at 5, ECF No. 18.) The Court granted Plaintiffs "leave to amend if Plaintiffs are able in good faith to cure these pleading deficiencies." (*Id.*)

  In the SAC, Plaintiffs now allege that "[f]ollowing prior incidents, an agreement was reached between Plaintiffs and Defendant[.]" (SAC ¶ 13.) Plaintiffs further allege that in the settlement agreement, "both parties agreed to cease further confrontations, harassment, or exclusionary conduct related to Plaintiffs' lawful sidewalk activity"; "Plaintiffs relied on this agreement and refrained from further escalation"; and Trader Joe's "later breached this agreement by resuming hostile conduct and exclusionary actions." (SAC ¶¶ 13-15) (bold omitted).

  Trader Joe's moves to dismiss Murphy from the breach of contract claim because he was not a party to the settlement agreement (Def.'s Mot. at 5), and Plaintiffs do not oppose dismissing Murphy from that claim (*see generally* Pls.' Opp'n). Accordingly, the Court

dismisses Murphy from the breach of contract claim with prejudice, but finds that Yarn has stated a plausible breach of contract claim against Trader Joe's.[2]

## II.     DEFAMATION CLAIM

### A.     Applicable Law

"To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party." *Neumann v. Liles*, 369 P.3d 1117, 1121 (Or. 2016) (citing *Wallulis v. Dymowski*, 918 P.2d 755, 757-58 (Or. 1996)). The Oregon Supreme Court has explained that "[a] defamatory statement is one that would subject the plaintiff 'to hatred, contempt or ridicule[,] tend to diminish the esteem, respect, goodwill or confidence in which [the plaintiff] is held[,] or . . . excite adverse, derogatory or unpleasant feelings or opinions against [the plaintiff].'" *Id.* (simplified) (quoting *Farnsworth v. Hyde*, 512 P.2d 1003, 1004 (Or. 1973)); *Lowell v. Wright*, 512 P.3d 403, 411 (Or. 2022) (describing a defamatory statement in the same manner and finding that such a statement "can be the basis for a defamation claim").

"To be actionable, a [statement] must be both false and defamatory." *Reesman v. Highfill*, 965 P.2d 1030, 1034-35 (Or. 1998) (citing *Harley-Davidson v. Markley*, 568 P.2d 1359, 1361-62 (Or. 1977)); *see also Kolwitz v. Lincoln Cnty. ex rel. Lincoln Cnty. Sheriff's Off.*, 520 F. App'x 570, 570-71 (9th Cir. 2013) (holding that the self-represented plaintiffs "failed to raise a triable dispute as to [the] required elements" of their defamation claim, and noting that "for a statement to be actionable under Oregon law, the statement at issue must be both defamatory and false" (citing *Reesman*, 965 P.2d at 1034)).

---

[2] The parties did not provide the Court with a copy of the settlement agreement at issue, but the Court assumes the facts in the SAC are true for the purpose of evaluating the motion to dismiss.

B.     Analysis

In the FAC, Plaintiffs alleged that "Trader Joe's published false statements about Plaintiff and his associate, including verbal and written assertions that they were banned and engaging in solicitation" and that "[t]hese statements were untrue and made with reckless disregard for the truth." (FAC ¶¶ 20-21.) Specifically, Plaintiffs alleged that Trader Joe's damaged their reputation by placing a sign outside of its store "that falsely implied Plaintiff was an unwanted solicitor." (*Id.* ¶ 10.) The Court dismissed Plaintiffs' defamation claim on the ground that they could not demonstrate the falsity of a statement that they were banned or unwanted at Trader Joe's. (Op. & Order at 7.)

In the SAC, Plaintiffs now allege that Trader Joe's "knowingly made false statements to law enforcement asserting that Plaintiffs were causing a disturbance" and Trader Joe's "knew the statements were false or acted with reckless disregard for the truth." (SAC ¶¶ 22, 24.) Trader Joe's moves to dismiss Plaintiffs' defamation claim on the ground that the challenged statements to law enforcement are protected by a qualified privilege. (Def.'s Mot. at 6-7.) Trader Joe's argues that the facts in Plaintiffs' amended complaint "are insufficient to overcome Trader Joe's qualified privilege to report a possible crime." (*Id.* at 7.) Plaintiffs respond that whether Trader Joe's abused any qualified privilege "by making false, exaggerated, or reckless statements is a factual issue that cannot be resolved at the pleading stage." (Pls.' Opp'n at 3-4.) Plaintiffs further dispute Trader Joe's characterization of the surrounding events and maintain that the "accusations made against them were false and stigmatizing." (*Id.* at 4.)

The Court agrees that the alleged defamatory statements that Trader Joe's made to law enforcement are protected by a qualified privilege. See *Delong v. Yu Enters, Inc.*, 47 P.3d 8, 12 (Or. 2022) ("We are satisfied that the prevailing common-law rule-that informal statements to police made before the initiation of criminal proceedings enjoy . . . a qualified privilege[.]").

PAGE 7 – OPINION AND ORDER

A speaker abuses the qualified privilege if he "disbelieves or lacks reasonable grounds to believe that the defamatory statement is true, if the statement is made for purposes outside the scope of the privilege, if the statement is made to someone who is not reasonably believed to be necessary to accomplish the purpose of the privilege, or if the statement includes defamatory matter that is not reasonably believed to be necessary to accomplish the purpose of the privilege." *Medina v. Columbia River Fire & Rescue*, No. 3:23-cv-01203-HZ, 2024 WL 2209111, at *10 (D. Or. May 15, 2024) (citing *Lewis v. Carson Oil Co.*, 127 P.3d 1207, 1210 (Or. Ct. App. 2006)).

Plaintiffs allege that Trader Joe's informed law enforcement that Plaintiffs were causing a disturbance but lacked reasonable grounds to believe its report was true. (SAC ¶¶ 22, 24.) Accepting those allegations as true—as the Court must at this stage—the Court finds that Plaintiffs have plausibly alleged facts that could support a finding that Trader Joe's abused its qualified privilege by making a false report to law enforcement while lacking reasonable grounds to believe the report was true. As a result, the Court denies Trader Joe's motion to dismiss Plaintiffs' defamation claim. *See Elizabeth Retail Props. LLC v. KeyBank Nat'l Ass'n*, 83 F. Supp. 3d 972, 996 (D. Or. 2015) (concluding that a conditional privilege attached to the defendant's publication but denying motion to dismiss defamation claim because a conditional privilege defense is "fact dependent and require[s] the finder of fact to evaluate evidence" the plaintiff "must be given the opportunity to potentially overcome this qualified privilege"); *cf. Ruggeroli v. Residential Real Est. Council*, No. CV-23-00259-TUC-JAS, 2024 WL 4203156, at *10 (D. Ariz. Sept. 16, 2024) ("Drawing all reasonable inferences in favor of Plaintiff, the Court finds Plaintiff alleged evidence of malice such that [the defendant] abused its qualified privilege. Thus, the Court denies the motion to dismiss Count Three on qualified privilege grounds.").

PAGE 8 – OPINION AND ORDER

### III.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

#### A.  Applicable Law

"To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that '(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.'" *Babick v. Or. Arena Corp.*, 40 P.3d 1059, 1063 (Or. 2002) (quoting *McGanty v. Staudenraus*, 901 P.2d 841, 849 (Or. 1995)). "Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law." *Harris v. Pameco Corp.*, 12 P.3d 524, 529 (Or. Ct. App. 2000).

"The third IIED element . . . is often dispositive." *Upchurch v. Multnomah Univ.*, No. 3:19-cv-00850-AC, 2021 WL 6066283, at *4 (D. Or. Dec. 7, 2021), *findings and recommendation adopted*, 2021 WL 6064027 (D. Or. Dec. 22, 2021). "On this element the court plays a gatekeeper role by determining in the first instance whether actions stated in a claim might rise to the level of outrageousness demanded for an IIED claim." *Id.* "The bar for extraordinary departure from social acceptability is set very high." *Id.* "[M]erely rude, boorish, tyrannical, churlish, or mean" conduct does not support an IIED claim. *Id.* (simplified).

#### B.  Analysis

In the FAC, Plaintiffs alleged that the conduct of Trader Joe's—"including repeated harassment, false allegations, interference with a lawful nonprofit, and public humiliation"—was intentional, outrageous, and "caused Plaintiff severe emotional distress." (FAC ¶¶ 24-25.) The Court dismissed Plaintiffs' IIED claim on the ground that they failed to allege conduct that rose to the very high bar for extraordinary transgressions necessary for an IIED claim. (Op. & Order at 9.)

PAGE 9 – OPINION AND ORDER

In the SAC, Plaintiffs now allege that the conduct of Trader Joe's was "extreme and outrageous," that Trader Joe's "intended to cause distress or acted with reckless disregard," and Plaintiffs "suffered severe emotional distress." (SAC ¶¶ 34-36.) Trader Joe's moves to dismiss Plaintiffs' IIED claim on the ground that the alleged acts against it "do not constitute an extraordinary transgression of the bounds of socially tolerable conduct." (Def.'s Mot. at 12.) The Court agrees. *See Ray v. Walmart Inc.*, No. 3:23-cv-01308-AR, 2024 WL 3432186, at *4 (D. Or. Apr. 29, 2024) ("As pleaded, the Walmart store manager insulted [the plaintiff]; refused to permit [the plaintiff] to take a purchase he had previously left in the store or give him a refund; when [the plaintiff] refused to leave, had an armed security guard physically escort [the plaintiff] outside the store by grabbing and twisting [the plaintiff]'s right arm; and banned [the plaintiff] from the store. Those facts, viewed in the light most favorable to [the plaintiff], evince poor customer service at best and offensive conduct at worst. But that offensive conduct nevertheless does not exceed the high threshold of the extraordinary transgression of socially tolerable conduct for an IIED claim under Oregon law."), *findings and recommendation adopted as modified*, 2024 WL 3430497 (D. Or. July 16, 2024); *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1230 (D. Or. 2016) (dismissing IIED claim because the alleged conduct did not rise to the level of Oregon's "very high bar [for extraordinary transgressions]" and noting that "Oregon [c]ourts have found that even patently felonious conduct does not necessarily rise to the level of an IIED claim" (citing *Shay v. Paulson*, 884 P.2d 870, 872 (Or. Ct. App. 1994))), *aff'd*, 925 F.3d 1133 (9th Cir. 2019).

Even accepting Plaintiffs' allegations as true, the conduct of Trader Joe's in confronting Plaintiffs, asking them to leave the area, and reporting them to law enforcement for causing a disturbance outside the store does not exceed the high threshold of an extraordinary transgression

PAGE 10 – OPINION AND ORDER

of socially tolerable conduct to support an IIED claim under Oregon law. As a result, the Court dismisses Plaintiffs' IIED claim with prejudice.[3]

## IV.   INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

### A.   Applicable Law

To state a claim for tortious interference with economic relations under Oregon law, a plaintiff must plead facts sufficient to prove "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages." *Providence Health & Servs. Or. v. Mancuso*, 524 P.3d 973, 984 (Or. Ct. App. 2023) (citing *Allen v. Hall*, 974 P.2d 199 (Or. 1999)).

### B.   Analysis

Plaintiffs newly allege in the SAC that they had "a reasonable expectation of receiving donations and public support[,]" that Trader Joe's "knew of Plaintiffs' charitable activities[,]" and Trader Joe's "intentionally interfered through improper means, including false reports, harassment, and stigmatizing signage." (SAC ¶¶ 26-28.) Plaintiffs assert that they "suffered economic and reputational harm as a result." (*Id.* ¶ 29.) Trader Joe's moves to dismiss Plaintiffs' IIER claim on the grounds that they lack standing and fail to state a claim (Def.'s Mot. at 7-11),

---

[3] *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008), *as amended* (Aug. 26, 2008) (affirming dismissal with prejudice for failure adequately to plead a required element of the claim) (citation omitted); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) (explaining that "a district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend [the plaintiff's] complaint") (simplified).

and Plaintiffs respond that their "allegations are sufficient at the pleading stage." (Pls.' Opp'n at 5.)

The first element of an IIER claim requires "a professional or business relationship" or "a prospective economic advantage." *Allen*, 974 P.2d at 202. Courts applying Oregon law have consistently held that "the mere possibility" that someone might buy a product "is not enough, alone, to create a business relationship" in the context of an IIER claim. *FLIR Sys., Inc. v. Sierra Media, Inc.*, No. CV-10-971-HU, 2011 WL 1832806, at *8 (D. Or. May 10, 2011). Even if—as Plaintiffs assert—Trader Joe's knew about Plaintiffs' charitable activities, the alleged activities included the mere possibility that someone may donate to the charity. Where Plaintiffs do not have a professional or business relationship with passing pedestrians or Trader Joe's customers attempting to enter the store, there is no business relationship with which Trader Joe's could interfere. As a result, Plaintiffs cannot state a viable IIER claim. *See Kadyk v. Long*, No. 3:11-cv-01312-AC, 2013 WL 2550742, at *9 (D. Or. June 5, 2013) ("Thus, viewing these undisputed facts in the light most favorable to [the plaintiff], the court finds [the plaintiff] is unable, as a matter of law, to establish an [IIER] claim against [the defendant]; there is no evidence of an existing or expected professional or business relationship as recognized under Oregon law."); *FLIR Sys., Inc.*, 2011 WL 1832806, at *8 ("The mere possibility that a person or business might buy a product from [the defendant] in the future is not enough, alone, to create a business relationship for the tort at issue, nor to establish the defendants' knowledge of and intent to interfere with the relationship. Accordingly, defendants['] motion to dismiss [the plaintiff]'s claim for intentional interference with a business relationship is granted."). Accordingly, the Court grants Trader Joe's motion to dismiss Plaintiffs' IIER claim, and does so with prejudice because amendment would be futile where Plaintiffs lack standing to assert an IIER claim on

PAGE 12 – OPINION AND ORDER

behalf of their charity. Cf. *Hiraide v. Vast Systems Tech. Corp.*, No. C-08-04714RMW, 2009 WL 2390352, at *13 (N.D. Cal. Aug. 3, 2009) ("Defendant is correct that plaintiff does not have standing to assert a claim for interference with economic relations where the plaintiff himself was not a party to such economic relationship.").

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Trader Joe's motion to dismiss (ECF No. 25) and dismisses Murphy's breach of contract claim and Plaintiffs' IIED and IIER claims with prejudice. Yarn's breach of contract claim and Plaintiffs' defamation claim survive and Trader Joe's shall file its answer by March 16, 2026.

**IT IS SO ORDERED.**

DATED this 2nd day of March, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge